UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL E. SULLIVAN                    CIVIL ACTION

VERSUS                                 NO. 11-2597

WORLEY CATASTROPHE                     MAGISTRATE JUDGE
SERVICES, LLC                          JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

Michael E. Sullivan sued his former employer, defendant Worley Catastrophe

Services, LLC ("Worley"), alleging that Worley discriminated against him based on his

age by terminating his employment in September 2010 and refusing to rehire him, in

violation of the Age Discrimination in Employment Act (the "Act").  29 U.S.C. § 621 et

seq.  He also alleges that Worley intentionally caused him emotional distress and

breached their employment agreement by failing to pay him agreed upon wages, in

violation of Louisiana state law.  Complaint, Record Doc. No. 1.

This matter was referred to a United States Magistrate Judge for all proceedings

and entry of judgment in accordance with 28 U.S.C. § 636(c), upon the written consent

of all parties.  Record Doc. No. 12.

Worley filed a motion for summary judgment, purportedly seeking dismissal of

all of plaintiff's claims.  The motion is supported by the declaration under penalty of

perjury of Worley's Chief Administrative Officer, Allen Carpenter; excerpts from

plaintiff's depositions taken in this case and in a different case he filed against Worley

in Louisiana state court; and documents obtained from the Equal Employment Opportunity Commission.  Record Doc. No. 15.  As to dismissal of plaintiff's breach of contract claim, Worley cites to a portion of Sullivan's deposition in which his counsel stated that he does not intend to pursue that claim in this court because the same claim is pending in state court.  Defendant's Exh. C, Record Doc. No. 15-4 at p. 4-5. Defendant fails to make any argument regarding Sullivan's intentional infliction of emotional distress claim.

Plaintiff filed a timely opposition memorandum, supported by his own declaration under penalty of perjury, the declarations of four other fact witnesses, and the declaration and expert report of Maria Sirois, a professor of Analytics and Six Sigma at Loyola University.  Record Doc. No. 20.  All of Sullivan's arguments relate to his age discrimination claim.  He says nothing to confirm or dispute defendant's contention that his breach of contract claim should be dismissed.

Worley received leave to file a reply memorandum, Record Doc. Nos. 21, 22, 23, which contains three new exhibits.  Defendant's Exhs. A, B, and C, Record Doc. Nos. 23-1, 23-2 and 23-3, respectively.  Because none of this new evidence would affect the outcome of the summary judgment motion, even if the court considered it, the court has not considered the exhibits in reaching a decision on the motion and sees no need to give Sullivan the opportunity to respond to them.

2

Having considered the complaint, the submissions of the parties, and the applicable law, and for the following reasons, IT IS ORDERED that the motion is GRANTED as to plaintiff's age discrimination claims.  IT IS FURTHER ORDERED that plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

## I.   THE UNDISPUTED FACTS

The following facts are established by the competent summary judgment evidence, which consists primarily of Carpenter's declaration, Defendant's Exh. A, Record Doc. No. 15-2, and excerpts from plaintiff's deposition in the instant case.  Defendant's Exh. C, Record Doc. No. 15-4.  These facts are accepted as undisputed solely for purposes of the pending motion.

Worley provides catastrophe response services, including highly trained and skilled professional claims adjusters to investigate, evaluate and adjust losses caused by natural disasters and other environmental events.  Because of the nature of this business, the employment of adjusters is usually temporary and project-specific.

Worley was retained to handle third-party claims against BP arising out of the April 20, 2010 explosion of the Deepwater Horizon offshore oil rig in the Gulf of Mexico (the "BP Project").  Worley hired claims adjusters for the BP Project and assigned them to either its general claims group or its large loss unit.  Generally, adjusters with business interruption or other relevant experience were assigned to the large loss team, where they received a higher rate of pay than the adjusters assigned to the general claims team.

Worley employed Sullivan as a claims adjuster on July 19, 2010 and assigned him to the large loss unit.  He understood that the BP Project was temporary and would end at some point.  He worked at the main claims adjusting facility in Hammond, Louisiana, known as the Intralox facility.  Sullivan was continuously employed in the large loss unit through September 17, 2010.  He was 57 years old when he was hired and when his employment was terminated.

An independent third-party agency, the Gulf Coast Claims Facility (the "GCCF"), took over administration of claims against BP on August 23, 2010.  Worley is not related to and does not control the GCCF.  The GCCF decided at that time to eliminate the large loss unit of adjusters because it did not want any specialized units and instead wanted to funnel all claims into a single queue to be handled by any of the adjusters.  Defendant nonetheless continued to pay the large loss unit adjusters the higher rate of pay with the expectation that they would be required to handle any special projects that might arise.

In early September 2010, Worley was instructed by its client, the GCCF, to reduce the claims adjusting staff assigned to the BP Project by approximately 246 adjusters no later than September 18, 2010.  Worley laid off approximately 100 claims adjusters at the Intralox facility, including Sullivan, on September 17, 2010.  Worley also laid off claims adjusters at the majority of its 35 field offices across the Gulf Coast.

The adjusters who were laid off were primarily in the large loss unit.  Worley's personnel records reveal that at least thirteen (13) adjusters between the ages of 21 and

4

38 were laid off from the Intralox facility during the reduction in force and that at least 55 adjusters between the ages of 58 and 72 at the Intralox facility were retained.

Worley held a meeting with approximately 100 adjusters, including plaintiff, shortly before the reduction in force to inform them that they were being laid off. According to the declarations of Sullivan and three other adjusters who attended that meeting, Allen Carpenter, who was then defendant's Manager of Corporate Compliance, "stated words to the effect that in determining who would be laid off, 'no one had been singled out', and that the layoffs were 'completely random'." Declaration of Michael Sullivan, Plaintiff's Exh. B, Record Doc. No. 20-2, at ¶ 5; declaration of Scott Shoemaker, Plaintiff's Exh. D, Record Doc. No. 20-4 at ¶ 5; declaration of Jimmy E. Phillips, Plaintiff's Exh. E, Record Doc. No. 20-5 at ¶ 5; declaration of John Lane, Plaintiff's Exh. F, Record Doc. No. 20-6 at ¶ 5.  Defendant concedes solely for purposes of the pending motion for summary judgment that Carpenter made such a statement.

The same four witnesses also state identically that "in looking around the room, it was clear that older, more experienced workers had been selected."  Sullivan declaration, Record Doc. No. 20-2, at ¶ 6; Shoemaker declaration, Record Doc. No. 20-4 at ¶ 7; Phillips declaration, Record Doc. No. 20-5 at ¶ 6; Lane declaration, Record Doc. No. 20-6 at ¶ 6.  No new adjusters were hired after the September 2010 reduction in force.  All of Worley's claims adjustment work on the BP Project ended on June 2, 2012.

II.   <u>ANALYSIS</u>

A.   <u>Summary Judgment Standards</u>

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
> (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

B.    Plaintiff Has Not Complied with Fed. R. Civ. P. 56(d)

Sullivan argues that defendant's motion for summary judgment is premature because discovery is not complete and he should be allowed time to compel Worley to

provide additional discovery responses.  This argument fails for three reasons.  First, Worley may file a summary judgment motion at any time, including as late as 30 days after the close of all discovery.  Fed. R. Civ. P. 56(b).  Defendant need not wait for plaintiff to complete his discovery.

Second, Sullivan has not supported his argument with any affidavit or declaration, as required by Rule 56(d), and has not demonstrated how the allegedly needed additional discovery materials would create a genuine issue of material fact or why he cannot present facts essential to his opposition.

> [Plaintiff's] argument fails because Rule 56 does not require that any discovery take place before summary judgment can be granted.  As a result, in a motion to extend the time to respond to a motion for summary judgment, the simple claim that discovery has not closed is insufficient. . . . [A]ny party claiming the need for additional discovery to defend against a motion for summary judgment must make a sufficient showing under [former] Fed. R. Civ. P. 56(f) [now Fed. R. Civ. P. 56(d)] . . . .
>
> For a party to mandate relief under Rule 56(f), the party must show both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence.  The . . . party may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment. . . .  Moreover, another criteria for relief under Rule 56(f) is that the movant must have exercised due diligence in discovery.

Baker v. Am. Airlines, Inc., 430 F.3d 750, 756 (5th Cir. 2005) (quotations, citations and footnote omitted) (emphasis added); accord Mitchell v. Sikorsky Aircraft, No. 12-10523, 2013 WL 3239439, at *3 (5th Cir. Mar. 5, 2013).

Third, Sullivan has already had more than a year in which to conduct discovery. After defendant filed its motion for summary judgment, plaintiff was granted an unopposed three-month extension of the summary judgment submission date and a six-month continuance of the trial date, including an extension of the discovery deadline. He complains vaguely in his opposition memorandum that defendant's discovery responses are incomplete, but he has never moved to compel any additional responses despite ample time to do so.

In these circumstances, Sullivan has not met the requirements of Fed. R. Civ. P. 56(d) sufficient to delay consideration of defendant's motion for summary judgment to allow him more time for discovery. The court will rule on defendant's motion at this time.

C.    Standards for Age Discrimination Claims

The standards for establishing an age discrimination claim are well established.

The Age Discrimination in Employment Act, ("ADEA") 29 U.S.C. §§ 621-634 provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).   The Supreme Court has recently held that to establish discrimination under the ADEA a plaintiff must prove that age was the "but for" cause of her employer's adverse employment decision.  Gross v. FBL Fin. Serv., Inc., 557 U.S. 167, [177] . . . (2009). . . .  As a result, a plaintiff can recover under the ADEA only if her employer has no legitimate reason for the challenged employment decision or if the plaintiff can show that the employer's given reason is a mere pretext.   Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).  Even though Gross

failed to clarify whether the <u>McDonnell Douglas</u> burden shifting framework applies to ADEA claims, the Fifth Circuit has continued to apply it to ADEA claims. <u>Id.</u> Under the <u>McDonnell Douglas</u> framework a plaintiff must first establish a <u>prima facie</u> case of discrimination. <u>Machinchick[ v. PB Power, Inc.</u>, 398 F.3d 345, 352 (5th Cir. 2005)].

. . . .

Under the <u>McDonnell Douglas</u> framework a plaintiff is first required to provide sufficient evidence to establish a prima facie case of age discrimination. <u>Machinchick</u>, 398 F.3d 345 at 352. To establish a <u>prima facie</u> case of age discrimination, "a plaintiff must show (1) that he was discharged; (2) that he was qualified for the position; (3) he was within the protected class [at least 40 years old] at the time of the discharge; <u>and</u> (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged <u>because of his age</u>." <u>Jackson</u>, 602 F.3d 374 at 378 (quoting <u>Berquist v. Wash. Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007)).

<u>Bryan v. Wood Enters.</u>, No. 08-3928, 2010 WL 3922165, at *3, *4 (E.D. La. Sept. 27, 2010) (emphasis added).

The elements of a prima facie case are slightly different in a reduction-in-force case. In such a case, plaintiff must also show that another position for which he was qualified was available at the time of his discharge.

In a reduction-in-force case, a party makes out a <u>prima facie</u> case of age discrimination by showing (1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume <u>another position</u> at the time of the discharge; <u>and</u> (4) evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.

<u>Tyler v. La-Z-Boy Corp.</u>, 506 F. App'x 265, 269 (5th Cir. 2013) (citing <u>Nichols v. Loral Vought Sys. Corp.</u>, 81 F.3d 38, 41 (5th Cir. 1996); <u>Amburgey v. Corhart Refractories</u>

Corp., 936 F.2d 805, 812 (5th Cir. 1991); Thornbrough v. Columbus & Greenville R.R.,

760 F.2d 633, 644 (5th Cir. 1985)) (footnote and quotations omitted) (emphasis added).

If plaintiff can establish a prima facie case under either the traditional or the

reduction-in-force standard, the second and third steps of the burden-shifting analysis are

the same.

> "The burden of production then shifts to the defendant to proffer a
> legitimate, non-discriminatory reason for the challenged employment
> action.  The defendant may meet this burden by presenting evidence that
> 'if believed by the trier of fact, would support a finding that unlawful
> discrimination was not the cause of the employment action.'"  "If the
> defendant meets its burden, the presumption of discrimination created by
> the plaintiff's prima facie case disappears and the plaintiff must meet [his]
> ultimate burden of persuasion on the issue of intentional discrimination."

Id. (quoting Machinchick, 398 F.3d at 350; Nichols, 81 F.3d at 41 (quoting St. Mary's

Honor Ctr. v. Hicks, 509 U.S. 502, 506-08 (1993)) (emphasis added).

D.       Plaintiff Fails to Produce Evidence that Another Position Was Available

Worley argues that Sullivan cannot establish the third prong of a prima facie case

under the reduction-in-force standard, i.e., that he was qualified to assume a position that

was available at the time of his discharge, because it is undisputed that Worley did not

hire any new adjusters for the BP Project after the September 2010 layoffs.  See Tyler,

506 F. App'x at 270 (affirming summary judgment when plaintiff "has not produced

evidence that any new employees–let alone any new, younger ones–were hired as trainers

following his termination" from a trainer position) (quotation and citations omitted);

Creaghe v. Albemarle Corp., 98 F. App'x 972, 975 (5th Cir. 2004) (affirming summary judgment when plaintiff "identified no alternative position for which he was qualified when he was fired"); Love v. Hajoca Corp. No. 4:11-1192, 2013 WL 4875045, at *5 (S.D. Tex. Sept. 11, 2013) (summary judgment granted when plaintiff failed to show that he was qualified to assume an available position at the time of the reduction in force).

Thus, if the court considers only the reduction-in-force standard, Sullivan cannot establish a prima facie case of age discrimination and his claim must be dismissed. However, defendant argues alternatively that plaintiff cannot establish a prima facie case under the traditional standard. If the court finds that plaintiff can make out a prima facie case under either standard, Worley argues in the further alternative that it has produced a legitimate, nondiscriminatory reason for its action. Defendant contends that plaintiff has no evidence to rebut its legitimate reason and cannot show that its stated reason was actually a pretext for age discrimination. In an abundance of caution and in the interest of completeness, the court considers these alternative arguments.

> E.   Plaintiff Fails to Produce Evidence that Age Discrimination Was the "But-for" Cause of his Termination

As to the fourth prong of either of the prima facie case standards, Worley argues that plaintiff has no competent summary judgment evidence to establish that he was discharged "because of his age," Jackson, 602 F.3d 374 at 378, or that Worley "intended to discriminate" on the basis of his age when it decided to lay him off. Tyler, 506 F.

13

App'x at 269. The evidence that Sullivan proffers to support the fourth prong of his prima facie case is the same evidence on which he relies to carry his ultimate burden of persuasion at the third stage of the McDonnell Douglas burden-shifting framework. Therefore, I will assume without deciding that he could establish a prima facie case and analyze the evidence under the remaining two steps of the McDonnell Douglas framework.

Worley has met its burden to produce a legitimate, non-discriminatory reason for its termination of Sullivan's employment. This "burden is only one of production, not persuasion, involving no credibility assessments." West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 (5th Cir. 2003) (quotation omitted).

The undisputed evidence shows that the BP Project was temporary. The GCCF decided to eliminate the large loss unit to which Sullivan was assigned and the GCCF instructed Worley to reduce the claims adjusting staff by approximately 246. Worley laid off approximately 100 adjusters, including Sullivan, at the Intralox facility and laid off additional adjusters at the majority of its 35 field offices. Worley's stated reason for terminating adjusters primarily from the large loss unit was that it no longer needed this specialized and higher paid group after the GCCF directed Worley to consolidate all claims in a single queue to be handled by any of the adjusters. At least thirteen (13) adjusters between the ages of 21 and 38 were laid off during the reduction in force, while at least 55 adjusters between the ages of 58 and 72 at the Intralox facility were retained.

14

Worley's "reasons for laying off hundred[s] of employees, including [plaintiff], in response to business conditions are presumptively legitimate and nondiscriminatory because a reduction in force 'is itself a legitimate, nondiscriminatory reason for discharge.'" Tyler, 506 F. App'x at 270 (quoting Equal Employment Opportunity Comm'n v. Tex. Instruments Inc., 100 F.3d 1173, 1181 (5th Cir. 1996)); accord Kilgore v. Brookeland Indep. Sch. Dist., No. 13-40005, 2013 WL 4031038, at *3 (5th Cir. Aug. 8, 2013). Although Sullivan was qualified for his position, that does not refute defendant's legitimate reason for letting him go. "'In the context of a reduction in force, which is itself a legitimate, nondiscriminatory reason for discharge, the fact that an employee is qualified for his job is less relevant–some employees may have to be let go despite competent performance.'" Barber v. Shaw Group, Inc., 243 F. App'x 810, 811 (5th Cir. 2007) (quoting Tex. Instruments Inc., 100 F.3d at 1181).

Sullivan does not dispute that a reduction in force occurred, although he argues that Worley's motive for selecting him and other employees in the protected age group to be laid off was discriminatory. He therefore must offer evidence of pretext to rebut defendant's legitimate, nondiscriminatory reason. Jackson, 602 F.3d at 378. He "'may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.' . . . [I]t is insufficient under the ADEA to show that discrimination was a motivating factor; [plaintiff] must show that age was the 'but for' cause of the challenged" termination

decision.  <u>Dees v. United Rentals N. Am., Inc.</u>, 505 F. App'x 302, 304 (5th Cir. 2013)

(citing <u>Gross</u>, 557 U.S. at 173-78; <u>Moss v. BMC Software, Inc.</u>, 610 F.3d 917, 922, 928

(5th Cir. 2010)).

Sullivan has failed to come forward with competent summary judgment evidence

to show any material fact issues that Worley's given reason was a mere pretext and that

intentional discrimination was the "but for" cause of his termination.  <u>Id.</u>; <u>Moss</u>, 610 F.3d

at 922; <u>Jackson</u>, 602 F.3d at 378.  I address his evidence below.

1.   <u>The declaration of Charles Baldwin is speculative, conclusory and
          non-probative.</u>

The declaration of plaintiff's witness Charles Baldwin contains <u>no competent</u>

<u>evidence</u> that would lead to a reasonable inference that defendant discriminated against

Sullivan on the basis of his age when it laid him off on September 17, 2010.  Baldwin

states that he worked for Worley during some unspecified time period and until some

unspecified date in August 2010, after which he took a leave of absence.  Thus, he was

not working when the reduction in force occurred.  Declaration of Charles Baldwin,

Plaintiff's Exh. C, Record Doc. No. 20-3, at ¶ 3.  Although he says he worked in the

same building as Sullivan, Baldwin does not state that they were supervised by the same

managers.  He asserts vaguely and conclusorily that he "personally witnessed several

instances of blatant age discrimination practiced by the Worley managers against Worley

employees in the 'Large Loss Unit.'  These instances included age-based disparaging

16

comments directed at Worley employees by Worley managers, such as disparaging someone, and/or their performance because they were 'old.'" Id. at ¶¶ 4-5.

Baldwin's declaration that some unspecified number of extremely vaguely described, stray remarks were made by unnamed managers to unnamed employees at unspecified times before an unspecified date in August 2010 does not raise any disputed issue of material fact regarding plaintiff's claim of intentional age discrimination. The Fifth Circuit has

> repeatedly held that 'stray remarks' do not demonstrate age discrimination. In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee. Remarks may serve as sufficient evidence of age discrimination if they are: 1) age related, 2) <u>proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue.</u>

<u>Moss</u>, 610 F.3d 929 (citations and quotations omitted) (emphasis added).

Baldwin's declaration fulfills none of these criteria. He was admittedly absent from the Intralox facility for at least 17 days in September (if he took his leave of absence on August 31, 2010) and possibly for as much as 48 days (if he left on August 1, 2010) during the relevant time period before Sullivan was laid off. His declaration lacks specificity regarding all aspects of the allegedly age-based remarks. His statement is devoid of specific dates, manager names, employee names, location, content, context and the number of times he observed any age-based remarks. Baldwin's declaration

17

evidences no link at all between the disparaging comments and either Sullivan or the manager who decided to lay him off.  Sullivan himself testified that no one at Worley told him that he was being discharged because of his age or because he was "older." Deposition of Michael Sullivan, Defendant's Exh. C, Record Doc. No. 15-4 at pp. 47-48. Baldwin's legal conclusion that he witnessed "blatant age discrimination" is factually unsupported and inadmissible.

Accordingly, Baldwin's declaration fails to raise a disputed material fact issue that age discrimination was the "but for" cause of Sullivan's termination.

2.    <u>Plaintiff's Statistical Evidence Is Inadmissible</u>

Sullivan relies on his own and the declarations of three other claims adjusters that, at the pre-termination meeting in September 2010, Carpenter "stated words to the effect that in determining who would be laid off, 'no one had been singled out', and that the layoffs were 'completely random'." Sullivan declaration, Plaintiff's Exh. B, Record Doc. No. 20-2, at ¶ 5.  Sullivan contends that this statement was not true and that a reasonable factfinder could infer from the falsity of Carpenter's statement that age discrimination was the real reason for his termination.

To show that the layoffs could not have been random, Sullivan submitted a declaration and report from an expert statistician, Maria Sirois, in which she opines that the employees who were laid off, whom she was told had a median age of 56.42, "were significantly older than those who were retained," whom she was told had a median age

of 45.14.  She concludes that "[t]he probability that the significant age difference between the two groups . . . being due to random chance is less than .0001.  It is highly unlikely that this was a random layoff."  Declaration of Maria Sirois dated July 29, 2013, Record Doc. No. 20-1 at p. 2, ¶ 6; see also Sirois's Analysis Report dated July 26, 2013, Record Doc. No. 20-1 at pp. 3-6.

Sirois's declaration and report are inadmissible for several reasons.  First, before plaintiff filed her expert report in opposition to defendant's summary judgment motion, he did not disclose to Worley initially and did not supplement his disclosures under Fed. R. Civ. P. 26(a)(2) to reveal that he had hired an expert, and he also did not supplement his answers to defendant's written discovery requests to disclose this expert witness and provide defendant with her report, all as required by Fed. R. Civ. P. 26(e).  Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Sullivan has made no showing that his failure to disclose his expert and provide her report to defendant was substantially justified.  His failure is not harmless because defendant has had no opportunity to depose Sirois regarding her qualifications or the factual basis, assumptions and methodology underlying her opinions, nor to hire an

expert of its own to analyze her report and render another opinion.  Accordingly, her

declaration and report are excluded pursuant to Rule 37(c)(1).

Even if Sirois's expert report is not excluded under Fed. R. Civ. P. 37(c)(1), it is

unreliable and therefore inadmissible under Fed. R. Evid. 702.  That rule

> permits opinion testimony from a witness "qualified as an expert by
> knowledge, skill, experience, training, or education" if such testimony will
> assist the trier of fact and (1) "the testimony is based on sufficient facts or
> data," (2) "the testimony is the product of reliable principles and methods,"
> and (3) "the expert has reliably applied the principles and methods to the
> facts of the case." Fed. R. Evid. 702. In <u>Daubert v. Merrell Dow
> Pharmaceuticals, Inc.</u>, 509 U.S. 579 . . . (1993), the Supreme Court
> assigned to trial courts the responsibility of determining whether expert
> testimony under Rule 702 is "not only relevant, but reliable."

<u>United States v. Wen Chyu Liu</u>, 716 F.3d 159, 167 (5th Cir. 2013) (quoting <u>Daubert</u>, 509

U.S. at 589).  For purposes of the instant motion only, the court assumes without

deciding that Sirois is qualified as an expert.

"The proponent of expert testimony . . . has the burden of showing that the

testimony is reliable," <u>United States v. Hicks</u>, 389 F.3d 514, 525 (5th Cir. 2004), and

must establish all of the Rule 702 admissibility requirements "by a preponderance of the

evidence." <u>United States v. Fullwood</u>, 342 F.3d 409, 412 (5th Cir. 2003).  "The purpose

of the [<u>Daubert</u>] assessment is to ensure reliability, and the inquiry is flexible.  The court

has wide latitude in making its determination.  No separate hearing is necessary." <u>United

States v. Hoang</u>, 285 F. App'x 133, 136 (5th Cir. 2008) (citing <u>Hicks</u>, 389 F.3d at 525)

"A district court's <u>Daubert </u>inquiry need not take any specific form, and its sua sponte

consideration of the admissibility of expert testimony is permissible so long as the court has an adequate record on which to base its ruling." <u>Miller v. Baker Implement Co.</u>, 439 F.3d 407, 413 (8th Cir. 2006) (citing <u>Kirstein v. Parks Corp.</u>, 159 F.3d 1065, 1067 (7th Cir. 1998)); <u>see also</u> <u>Placida Prof'l Ctr., LLC v. Fed. Deposit. Ins. Corp.</u>, 512 F. App'x 938, 954 (11th Cir. 2013) (citation and quotation omitted) ("<u>Daubert</u> hearings are not required . . . and the district court was under no obligation to conduct a <u>Daubert</u> hearing to provide [plaintiff's expert] an additional opportunity to lay the foundation for his testimony.").

"'We are also mindful of the Supreme Court's directive that "it is very much a matter of discretion with the court whether to receive or exclude the [expert] evidence [submitted in opposition to a summary judgment motion]," and that an "appellate court will not reverse . . . unless the ruling is manifestly erroneous."'" <u>Id.</u> at 953 (quoting <u>Toole v. Baxter Healthcare Corp.</u>, 235 F.3d 1307, 1312-13 (11th Cir. 2000) (quoting <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 141 (1997))); <u>accord</u> <u>Shelter Ins. Cos. v. Ford Motor Co.</u>, No. 06-60295, 2006 WL 3780474, at *2 (5th Cir. 2006) (citing <u>Joiner</u>, 522 U.S. at 141-42; <u>Guy v. Crown Equip. Corp.</u>, 394 F.3d 320, 325 (5th Cir. 2004)).

> "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.' Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'"
>> "[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, <u>the facts underlying the expert's</u>

<u>opinion</u>, the link between the facts and the conclusion, et alia." "<u>Where an expert's opinion is based on insufficient information, the analysis is unreliable</u>."

<u>Seaman v. Seacor Marine L.L.C.</u>, 326 F. App'x 721, 724-25 (5th Cir. 2009) (quoting <u>Paz v. Brush Eng'd Mat'ls, Inc.</u>, 555 F.3d 383, 388 (5th Cir. 2009); <u>Knight v. Kirby Inland Marine Inc.</u>, 482 F.3d 347, 352, 355 (5th Cir. 2007)) (emphasis added). "[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory." <u>Hathaway v. Bazany</u>, 507 F.3d 312, 318 (5th Cir. 2007).

In the instant case, Sullivan failed to disclose to Sirois the source of the age data on which she relied in formulating her opinions. Her calculations rely entirely on the following statement made by Sullivan in his own declaration.

> After I was laid off, and in preparation for this litigation, I learned that there is a total of Worley employees at issue of 507. Approximately 104 of them were laid off when I was. The average age of those laid off was calculated to be 56.42 years, based on the known ages of 65 of the 104 persons laid off. The average age of those retained was calculated as 45.14 years, based on the known ages of 334 of the approximately 403 persons retained.

Sullivan declaration dated July 28, 2013, Plaintiff's Exh. B, Record Doc. No. 20-2 at ¶ 8.

However, plaintiff testified at his deposition on April 9, 2013 that he had <u>no personal knowledge</u> of the ages of the other persons who were laid off when he was. Sullivan deposition, Defendant's Exh. C, Record Doc. No. 15-4, at pp. 12-14 (pp. 30-33 of deposition transcript). Sullivan does not explain in his declaration how he obtained knowledge of previously unknown information in the four months since his deposition,

22

and he provides no verification of how he learned the age information, which on its face appears to be inadmissible hearsay.   See Snapt Inc. v. Ellipse Commc'ns Inc., 430 F. App'x 346, 352 (5th Cir. 2011) (citing Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987)) (affirming district court's striking as hearsay a witness's declaration "alleging, without providing a source, that 'it was learned' at mediation that [defendant] had acquired a password to [plaintiff's] servers.  Again, the district court cannot consider hearsay in affidavits.").

For purposes of Sirois's calculations, Sullivan's knowledge (even assuming it is personal knowledge) of the ages of the persons he describes in his declaration is incomplete.  He does not explain how he knows that the "total at issue" is 507, or how he knows the total numbers and (presumably) identities of those laid off and those retained.  He admittedly knows the ages of only 65 of the terminated 104 employees, or about 62.5 percent of the number terminated, and the ages of only 334 of the 403 persons retained, or about 83 percent of the number retained.  He does not provide any documentation of the supposedly known employees and their ages or birth dates, which means that none of the information in his declaration or in Sirois's report about the number or employees or their actual ages can be checked for accuracy.

Sirois also "assumed that the 399 observations for which there is age data represent a random selection of the 507 employees."  Record Doc. No. 20-1 at p. 6 (emphasis added).  In the absence of any information from Sullivan regarding how he

gained his alleged knowledge about the ages of the 399 persons and how those persons

were selected, Sirois's assumption that the selection of them was random is unsupported

by any factual evidence.

Although expert opinion testimony based on hearsay may be admissible, Logan

v. Pennaco Hosiery, 140 F.3d 1038, 1998 WL 156350, at *4 n.3 (5th Cir. 1998) (citing

Fed. R. Evid. 703; United States v. Gresham, 118 F.3d 258, 266 (5th Cir. 1997)); First

Nat'l Bank of Louisville v. Lustig, 96 F.3d 1554, 1576 (5th Cir. 1996), the significant

factual deficiencies in plaintiff's declaration render Sirois's reliance on the facts given

to her by Sullivan and her assumptions about those facts suspect.

Therefore, Sirois's report is unreliable and inadmissible under Rule 702.  See

Seaman, 326 F. App'x at 726 (internal quotations omitted) (Expert's causation opinion

was inadmissible when she based her understanding of the facts "on nothing more than

the suggestion to her by [plaintiff's]  counsel" of plaintiff's exposure to chemicals; her

"assumption . . . without any facts upon which [she] could have possibly surmised

exposure levels, rendered her causation opinion mere guesswork."); Hathaway, 507 F.3d

at 318-19 (expert's affidavit was properly excluded when he "does not, because he

cannot, offer any specific factual support for the reliability of his initial assumptions,"

which were based on factual testimony "that was uncertain regarding many details

necessary to [the expert's] analysis.  The extrapolation that [the expert] does from the

physical evidence . . . to overcome this evidentiary lack therefore depends on the furtive

inclusion of a number of supposed facts not in the record."); O'Hara v. Travelers, No. 2:11-CV-208-KS-MTP, 2012 WL 3062300, at *9 (S.D. Miss. July 26, 2012) ("In forming his opinions regarding the amount of damage to the house, [the expert] literally only considered his exterior viewing of the house, three photographs, and whatever Plaintiff might have told him.  No one could form a reliable opinion regarding the cost to repair and/or construct a house on that meager basis.").

Even if Sirois's declaration and report are not excluded under Fed. R. Civ. P. 37(c)(1) or for unreliability under Fed. R. Evid. 702, her opinions are irrelevant to plaintiff's age discrimination claim and therefore inadmissible under Rule 702 because her testimony will <u>not</u> assist the trier of fact.  Her evidence simply does not support an inference that Worley intentionally discriminated against Sullivan on the basis of his age.

Plaintiff argues that Sirois's report establishes a pattern and practice of age discrimination.  He and his witnesses also state in their declarations that "in looking around the room, it was clear that older, more experienced workers had been selected." However, this is a disparate <u>treatment</u> case, in which Sullivan alleges solely that Worley <u>intentionally discriminated</u> against <u>him</u> and in which he must show that age was the "but for" cause of the decision to terminate him particularly.

Plaintiff has <u>not</u> brought a claim of disparate <u>impact</u>, to which evidence of a statistical pattern in the application of a facially neutral policy might be relevant.

> Disparate impact claims involve facially neutral employment policies that
> create such statistical disparities disadvantaging members of a protected
> group that they are functionally equivalent to intentional discrimination.
> To establish a prima facie case of discrimination under a disparate impact
> theory, a plaintiff must show: (1) an identifiable, facially neutral personnel
> policy or practice; (2) a disparate effect on members of a protected class;
> and (3) a causal connection between the two.  The Supreme Court has
> explained that a prima facie case of disparate-impact liability [is]
> essentially, a threshold showing of a significant statistical disparity, and
> nothing more.
>
> Claims of disparate impact under Title VII must, of necessity, rely
> heavily on statistical proof. . . .  Ordinarily, a prima facie disparate impact
> case requires a showing of a substantial statistical disparity between
> protected and non-protected workers in regards to employment or
> promotion. . . .  Generally, a plaintiff must produce statistical evidence
> comparing the effects of a challenged policy on protected and unprotected
> groups of employees.

Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 491-92 (5th Cir. 2011) (quotations

and citations omitted); see Smith v. City of Jackson, 544 U.S. 228, 233-34 (2005) (Age

Discrimination in Employment Act authorizes disparate impact claim).

The presence or absence of discriminatory intent are not at issue in a disparate

impact case.  The text of the Act "focuses on the effects of the action on the employee[,]

rather than the motivation for the action of the employer."  Id. at 236; accord Bazile v.

City of Houston, 858 F. Supp. 2d 718, 762 (S.D. Tex. 2012) (citing Ricci v. DeStefano,

557 U.S. 557, 621 (2009) (Ginsburg, J., dissenting) (quoting Griggs v. Duke Power Co.,

401 U.S. 424, 431 (1973))); Young v. Covington & Burling LLP, 736 F. Supp. 2d 151,

161 (D.D.C. 2010) (citing Lewis v. City of Chicago, 130 S. Ct. 2191, 2200 (2010)).

Although "[s]tatistical evidence can be utilized by an individual <u>disparate treatment</u> plaintiff to help rebut the employer's non-discriminatory explanation . . . , more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee." <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 968 (5th Cir. 1999) (emphasis added). "'[S]tatistical data is not dispositive of a claim of intentional discrimination.' Simply showing that the [laid-off employees] consisted of a higher percentage of [employees over the age of 40] than the [entire pool of employees] does not, of itself, show that [defendant's] rationale for [the layoffs] was pretextual. More is required." <u>Arbor Bend Villas Housing, L.P. v. Tarrant County Housing Fin. Corp.</u>, No. 4:02-CV-478Y, 2005 WL 548104, at *11 (N.D. Tex. Mar. 9, 2005) (quoting <u>Asbury v. Brougham</u>, 866 F.2d 1276, 1282 (10th Cir. 1989)) (citing <u>Furnco Constr. Co. v. Waters</u>, 438 U.S. 567, 580 (1977)); <u>Bauer</u>, 169 F.3d at 968; <u>Byrom v. Accenture, Ltd.</u>, No. 3:02-CV-0124-N, 2003 WL 22255669, at *8 (N.D. Tex. Sept. 29, 2003)).

The Fifth Circuit has

recognized that gross statistical disparities resulting from a reduction in force or similar evidence may be probative of discriminatory intent, motive or purpose. Such statistics might in an unusual case provide adequate circumstantial evidence that an individual employee was discharged as part of a larger pattern of layoffs targeting older employees. This is not to say that such statistics are enough to rebut a valid, nondiscriminatory reason for discharging a particular employee. Generally, they are not, because under the <u>McDonnell Douglas</u> Title VII framework, a [factfinder] . . . would have to consider not just the employee's prima facie case, but also the

27

employer's articulated nondiscriminatory reason for its conduct with respect to the employee. The employee would then be attempting to prove the employer's reason was a pretext; proof of pretext, hence of discriminatory <u>intent</u>, by statistics <u>alone</u> would be a challenging endeavor.

<u>Walther v. Lone Star Gas Co.</u>, 977 F.2d 161, 162 (5th Cir. 1992) (citations and footnote omitted) (emphasis in original).

> Other circuits have expressed similar skepticism about the ability of statistics to rebut the employer's nondiscriminatory reasons. <u>See, e.g.</u>, <u>LeBlanc v. Great American Ins. Co.</u>, 6 F.3d 836, 848 (1st Cir. 1993) . . . (noting that "a company's overall employment statistics will have little direct bearing on the specific intentions of the employer when dismissing a particular individual."); <u>Barnes v. GenCorp., Inc.</u>, 896 F.2d 1457, 1469 (6th Cir. . . (1990) (when the defendant offers particularized reasons, this "cannot be rebutted by reference to the statistics already presented since the statistics here do not tend to establish that age played a factor in any <u>particular</u> decision.")

<u>Tex. Instruments Inc.</u>, 100 F.3d at 1185 (emphasis in original). "[P]articularly in age discrimination cases where innumerable groupings of employees are possible according to ages and divisions within the corporate structure, statistics are easily manipulated and may be deceptive." <u>Id.</u>

Even assuming that the ages of employees in Sirois's declaration and report are accurate, neither she nor plaintiff cites any information about the qualifications, experience, performance and pay level of any of the persons that Worley either laid off or retained. "[A] statistical analysis that did not purport to analyze the facts surrounding the circumstances of the individual at issue was 'impotent' to establish whether an

employer's stated reasons were pretextual." <u>Joseph v. City of Dallas</u>, 277 F. App'x 436, 442 (5th Cir. 2008) (quoting <u>Tex. Instruments Inc.</u>, 100 F.3d at 1185).

Sullivan asserts that Sirois's opinion refutes Carpenter's statement that "'no one had been singled out', and that the layoffs were 'completely random,'" as reported by plaintiff's witnesses. He argues that defendant's discriminatory motive can be inferred from the falsity of Carpenter's statement.

However, Carpenter's statement is not facially false. Assuming solely for purposes of its summary judgment motion that Carpenter made this statement, Worley contends that he meant that the reduction in force itself was random in the sense that the GCCF told Worley to lay off 246 adjusters by September 18, 2010 and did not care which employees were included. Carpenter did <u>not</u> say that decisions about which particular employees to terminate were made randomly. Worley continued to pay the large loss unit adjusters at a higher rate than it paid the other adjusters after the GCCF terminated the large loss unit in August 2010. Nothing in Carpenter's statement, Sirois's report or the declarations of plaintiff's fact witnesses rebuts Worley's strongly supported, legitimate reason for terminating plaintiff's employment during a reduction in force in September 2010 that primarily affected the large loss unit.

Even if Carpenter's statement could be interpreted as false and if Sirois's opinions were admissible to show that Worley did not randomly select those whom it laid off, no reasonable factfinder could infer from those facts that age discrimination was the actual

29

or "but for" reason why Worley terminated Sullivan. The reduction in force included a large number of claims adjusters from the large loss unit because that unit had been shut down by the GCCF. The large loss team generally consisted of adjusters with business interruption or other, more specialized experience than adjusters initially assigned to the general claims team, and the large loss adjusters continued to receive a higher rate of pay after the shutdown of their separate unit. Thus, to the extent that "more experienced" correlates loosely with "older," as Sullivan argues based on his and his fact witnesses' personal observations that "older, more experienced[1] workers" were in the meeting of those selected for layoff, the elimination of the large loss unit would require laying off more of the higher paid, older and presumably more experienced adjusters. Worley's summary judgment evidence confirms that at least thirteen (13) of the approximately 100 claims adjusters laid off at the Intralox facility were younger than 40 years old, which means that the remaining approximately 87 laid-off employees were more than 40 years old. However, Worley's evidence also establishes that at least 55 adjusters between the ages of 58 and 72 were retained on the BP Project at the Intralox facility. These facts support defendant's argument that age was not the determinative factor in choosing which employees to terminate and negate plaintiff's requested inference that age was the "but for" reason. Plaintiff "has, at best, only raised a genuine dispute as to a non-material

---

[1]Although the witnesses could personally observe that "most" of the people in the room were "older," it is highly questionable whether they had personal knowledge of the experience level of any person other than themselves.

fact," i.e., the interpretation of Carpenter's statement, "and summary judgment will not be denied on this basis." Dees, 505 F. App'x at 305.

Nothing in plaintiff's evidence, including his expert report, if it were admissible, leads to a reasonable inference that Sullivan was terminated because of his age. Accordingly, Worley is entitled to summary judgment as a matter of law as to plaintiff's age discrimination claim, which is dismissed with prejudice.

E.    Plaintiff's State Law Claims Are Dismissed Without Prejudice

Plaintiff asserts state law claims of intentional infliction of emotional distress and breach of contract.   "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  The court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3).  The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999); accord Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc., 554 F.3d 595, 602 (5th Cir. 2009).

The statutory considerations are whether

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Although the Fifth Circuit's

"general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute.  Thus, while the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

Batiste, 179 F.3d at 227 (quotations and citations omitted); accord Brookshire Bros., 554 F.3d at 602.  The district court must make its decision "in light of the specific circumstances of the case at bar," id. (citation omitted), and must "balance each of the statutory factors in order to determine whether" to retain jurisdiction.  Enochs v. Lampasas County, 641 F.3d 155, 159 (5th Cir. 2011).

The Fifth Circuit's

case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case [during more than 3 years of litigation, the court had decided 41 dispositive motions, 14 Daubert motions and 7 other motions in limine;

discovery was closed; and the parties were making final preparations for their fourth trial setting], that court has abused its discretion under 28 U.S.C. § 1367.

<u>Brookshire Bros.</u>, 554 F.3d at 602.

In the instant case, plaintiff's federal discrimination claims have been dismissed. The factors of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over his state law claims.  First, as noted, no federal claims remain in the case.  Second, comity favors dismissing the state law claims and letting the state court handle them because of Louisiana's interest in adjudicating the claims of its citizens brought under its laws.  Sullivan already has a breach of contract lawsuit pending against Worley in a state court.  At plaintiff's deposition in the instant case, his attorney expressed his intent to litigate that claim in state court.  Third, because the state law claims have not been addressed at all in this court and this court is not particularly familiar with them, judicial economy does not weigh in favor of maintaining jurisdiction.   Unlike the circumstances in <u>Brookshire</u>, this court has not invested a significant amount of resources in terms of motion practice, discovery or otherwise that might justify the continued exercise of its limited jurisdiction over the remaining state law claims.  Finally, fairness and convenience are equal whether the claim is brought in state or federal court.

"Unadjudicated pendant [sic] state law claims must be dismissed without prejudice to allow the plaintiff to refile in state court when a district court dismisses the federal

claims serving as the basis for its jurisdiction and elects not to exercise supplemental jurisdiction over the state law claims." <u>Brown v. Miss. Valley State Univ.</u>, 311 F.3d 328, 334 n.6 (5th Cir. 2002) (citing <u>Bass v. Parkwood Hosp.</u>, 180 F.3d 234, 246 (5th Cir. 1999)); <u>accord</u> <u>Johnson v. Tex. Bd. of Crim. Justice</u>, No. 07-20396, 2008 WL 5069357, at *2 (5th Cir. Dec. 2, 2008).  Accordingly, Sullivan's intentional infliction of emotional distress and breach of contract claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED and plaintiff's age discrimination claim is DISMISSED WITH PREJUDICE, plaintiff to bear all costs of these proceedings.

IT IS FURTHER ORDERED that plaintiff's state-law claims are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this _____7th_____ day of October, 2013.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

34